28 C.C.P.A. (Patents)

## FERSING v. FAST.

### Patent Appeal No. 4470.

Court of Customs and Patent Appeals.

July 2, 1941.

George H. Kennedy, Jr., of Worcester, Mass. (Charles E. Riordon, of Washington, D. C., of counsel), for appellant.

H. C. Dieserud, of New York City, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellant has here appealed from the decision of the Board of Appeals of the United States Patent Office in an interference proceeding in which the board affirmed the decision of the Examiner of Interferences in awarding priority of invention of the six counts involved to the senior party Fast. The sole issue for determination is one of originality. Both parties rely upon the same development activities to establish their respective cases.

The invention involved may be understood from a study of counts 1, 3 and 6 which are representative of the six counts involved and which follow:

"1. In a structure of the class described, a bearing member, a journal member, a flexible ring mounted between said members, said ring and one of said members having substantially spherical cooperating surfaces, and means coacting between said ring and the other of said members for tensioning the ring and deforming the same about spaced points, said means causing the ends of said ring to deflect inwardly toward the axis of the ring."

"3. A bearing structure comprising a pair of relatively movable concentric members, and a yieldable ring between said members, said ring having circumferentially spaced projections permanently fixed thereto and engaging one of said members for rotation in unison therewith, the ring being flexed permanently under an invariable initial force by the coaction between said projections and said one of said members, the other of said members having a surface of revolution cooperating with a surface on said ring, said ring being deformed by the flexing thereof to provide wedge-shaped lubrication pockets between said surface thereon and said surface of revolution, said surface of said ring having transversely extending grooves therein disposed intermediate said projections, and said ring having passages extending from the inner to the outer surface thereof and communicating with said grooves."

"6. In a structure of the class described, a bearing member, a journal member, a flexible ring mounted between said members, said ring and one of said members having substantially spherical cooperating surfaces, and means including spaced projections integral with said ring coacting between said ring and the other of said members for tensioning the ring and deforming the same about spaced points, said projections having their length extending axially of said ring to cause the ends of the ring to deflect inwardly toward the axis of the ring when the latter is tensioned."

The invention is clearly described in the briefs of both the parties. We quote from the brief of appellee as follows: "Briefly, the invention in issue may be described as a radial bearing in which the journal member has an undulatory outer surface provided by the permanent flexing of a ring about projections integral with the ring. The undulations are so small as to be practically imperceptible to the naked eye but they are sufficient to provide the desired wedge-shaped film pockets in cooperation with the bearing surface. The integral projections extend only part way across the width of the ring so that when it is tensioned by shrinking it over a journal hub, the ends of the ring will curl inwardly. Between the projections a series of oil-distributing grooves are provided on the outer face of the ring; these communicate with the interior of the ring through suitable oil holes. The proper bending of the ring into undulatory form is assisted by the transverse grooves which should be in definite relation to the projections. Each wedge-shaped pocket has its apex at one of the projections and its wide end at one of the grooves."

Appellant Fersing, a young man then 32 years of age, of Swedish birth, was in February, 1931, employed by appellee Fast for the purpose of working upon inventions in which Fast, who was the head of the Gustave Fast Engineering Corporation, was interested. Fersing was to receive $200 per month and his board and lodging on the estate of Fast at Annapolis, Maryland. Early in 1934, after having worked on perfecting other devices such as clutches, the efforts of the parties were directed to the development of the flexible ring bearing involved in the instant proceeding. Beginning in the early part of 1934, and continuing to September of that year, the efforts of the parties culminated in the construction of several bearings.

The present controversy involves the question as to who was the inventor of the patentable features of these bearings. It is the contention of the appellant that he not only suggested the broad idea of the invention to Fast, but that he also conceived and disclosed to Fast the elements constituting the ancillary features or additional improvements upon the original conception, which ancillary features are covered by certain of the counts at bar.

Appellee's application was filed on October 24, 1934, while that of appellant was filed on April 19, 1935. The burden being upon appellant to prove his case by a preponderance of the evidence, he took testimony to meet that burden. Testimony was taken by the appellee also. The two volumes of record, embracing more than 1,500 pages, consist largely of the testimony of the two parties. The alleged corroborating evidence will be commented upon later, but it may here be said that no testimony of any witness tends to corroborate to any great extent the testimony of either of the parties for the reason that most of the conversation between the parties which could possibly relate to disclosure of one to the other occurred in the Swedish language, which no witness but the parties to this proceeding understood.

Appellant has filed a brief consisting of nearly 100 pages, which is characterized chiefly by bitter criticism of the tribunals below and severe condemnation of the appellee in which wholly extraneous circumstances are dwelt upon, and in arguments, many of which are too far fetched to require consideration here. Appellant urges that the record contains circumstantial evidence and facts which support or corroborate his testimony. Appellee, in attempting to answer the brief of appellant, found it necessary to utilize more than 140 pages.

Appellant severely criticized the board for not answering certain contentions and arguments made by him. Under the circumstances of the case, we think the opinion of the board went into the facts with sufficient detail. It is obvious that the opinion of this court will be subject to the same criticism unless all of appellant's arguments are answered, and to do so would be to extend the opinion to an unwarrantable length. We feel called upon to comment only on some of the more salient points which we think are illustrative. These points involve some facts which are admitted and others which are in dispute.

Appellant's testimony is to the effect that he conceived the flexed ring idea from seeing a rubber band around a hexagonal pencil; that he conceived the idea that a bearing might be made by the distortable flexible ring method which would leave a multiplicity of wedge-shaped openings and that he disclosed this information to Fast in January. He claims to have made at least three drawings prior to January 10, 1934. None of these drawings were produced, it being claimed by appellant that Fast retained them and did not pro-

duce them. There is no satisfactory corroborative evidence concerning these alleged drawings.

On this phase of the case Fast contends that this notion, upon which both of them relied originally as the main idea in producing a new bearing was, by him, in February, 1934, discovered to be old in the art when a certain patent to one Mackensen, No. 1,947,559, issued. It must be remembered that admittedly the inventive ideas as defined by the appealed counts relate to improvements upon such a distorted ring bearing. Some of the suggestions embodied in the counts appellant admits were made by appellee. Appellee admits that appellant, some time in February, suggested the distorted flexible ring subject matter to him and that such a notion was derived from a consideration of ideas which characterized certain other inventions such as clutches which appellee Fast had made.

In the fall of 1934, after the device had been completed, the parties fell into disagreement with reference to who was the inventor. It is upon the conduct of Fast in preparing certain applications for patent and related matters that appellant chiefly relies as being corroboration of his testimony relating to his being the inventor.

During the latter part of the development period, a patent application was prepared at Fast's direction in the names of Fersing and Fast as joint inventors. Fersing refused to sign the application. The relationship at that time became strained, appellant claiming that he had not been fully paid for his time, which fact, at the time the altercation began, seems to be supported by the record. Appellant's testimony is to the effect that he was not willing to concede that the appellee had contributed in the conception of the invention defined by the claims presented in the joint application to such an extent that he was entitled to be regarded as a joint inventor.

Soon thereafter, when no further agreement between the parties could be reached, the attorneys for Fast prepared two separate applications. In the sole application prepared for Fersing's signature, Fast included the features he stated Fersing had contributed. Fersing refused to sign the sole application so prepared. Soon thereafter, appellee had prepared his instant application which covered most, if not all, of the patentable subject matter. (Appellee claims it contains all of it.)

It is also in the record that Fast brought an equity proceeding in the United States District Court for the Southern District of New York against Fersing aimed at requiring Fersing to assign to Fast certain subject matter relating to the instant invention which appellee claims is in part defined by the counts at bar.

As before stated, appellant's chief reliance for corroboration is upon the aforestated facts relating to the admissions by Fast in the preparation of said applications and the filing of the said suit. There are many other circumstances relating to drawings, etc., which we will not take space to enumerate, which appellant claims point clearly to the fact that he is the first inventor. For instance, one or more of the drawings of the sole application of appellee which is here involved are claimed to be identical with those of the aforesaid joint application.

We are inclined to dispose of this phase of the case summarily at this point. The burden was upon appellant to prove that he was the first inventor. The fact that he has no corroborating witnesses, owing to the peculiar circumstances of the case, is his misfortune. The law imposes upon the junior party the burden of proving by a preponderance of the evidence that he is the first inventor. Suspicions cannot supply the requirements of the law. It may be that under circumstances similar to those of which appellant complains, the first inventor, if the second to file his application, may be denied a reward, but no one, so far as we know, has ever suggested a better or more workable plan in determining patent priority than that of requiring the junior party, under circumstances like those at bar, to prove his case by a preponderance of the evidence.

It is a matter of common knowledge that where two persons are engaged in developing a patent idea and the invention seems to be one of promising importance, differences may arise as to the origin of the invention and ofttimes these differences are composed in such a satisfactory way that they do not reach the status of an issue in a reviewing court. This is done by compromise. We see nothing reprehensible on the part of appellee in attempting to compose the differences between him and his employee in the manner suggested by the record, and much of the bitter criticism of appellee indulged by the appellant is wholly uncalled for.

Certainly, in view of appellee's seniority in the Patent Office and his testimony and the record as a whole, we would be wholly unjustified in reversing the concurring Patent Office decisions in awarding priority to appellee for the reason that appellee had at some time, in an attempt to compromise, offered appellant more than he is in a position to obtain now. Moreover, if appellant had succeeded by the instant record in proving that he is a joint inventor and entitled to some portion of the invention defined by each of the counts, it would not avail him here because it is his burden to prove that he is the sole inventor of the patentable subject matter at issue.

The Examiner of Interferences went into the subject in considerable detail, and with reference to the evidence in part said:

"A large number of drawings have been introduced illustrating the development of the invention but they are of little aid on controversy since there is a disagreement between the parties as to where these drawings were made. The dates on the drawings themselves are of no more help since one large series of eighteen drawings (exhibit 11) were admittedly misdated and Mrs. Burgess testifies that in making tracings she placed the same date on the tracing as on the original drawing or if the drawing was not dated she selected the date she was instructed to put on which might be the actual date of the original drawing or the date of the tracing.

"Certainly such a system is not conducive to clear testimony after a period of time when the memory of the witnesses as to any particular drawing out of all the drawings made must of necessity be open to question.

"The lack of any clear system of dating drawings or tracings coupled with the fact that in one instance at least drawings were deliberately antedated leaves the whole question of dates in doubt and little credence can be given to any testimony relative to the sequence of the development drawings.

"The unreliability of this documentary evidence makes it necessary for the parties to rely to a great extent on oral testimony which in the present case can be given very little weight.

"Most of the voluminous testimony is by the parties themselves and is wholly uncorroborated.

"Fersing called but three corroborative witnesses, his wife Winifred Fersing, his father-in-law Stubbs and in rebuttal one Pyne.

"None of these witnesses had met Fersing prior to July, 1934, and hence can not testify of their own knowledge relative to any disclosure of Fersing to Fast either in January or February, 1934.

"Mrs. Fersing avers that Fersing said he was the inventor of the bearing but this is obviously heresay and of no value.

"Stubbs states that Fast told him that Fersing had invented the bearing * * * but on cross-examination it was developed that any admission that Fast made constitutes no more than he has credited Fersing with disclosing to him in his testimony in this interference.

"Pyne was called solely as a rebuttal witness in regard to an immaterial controversy relative to the laps that were used.

"While a statement made by Pyne in 1936 was introduced in evidence as to exhibit BBB to the effect Fersing figured out the curvatures of the bearings, the cross-examination developed the fact that Fersing refreshed his memory * * * and that Pyne in reality paid little attention to what Fast and Fersing were doing and could not tell whether it was Fast or Fersing who did the calculations."

The Examiner of Interferences then proceeds to hold that the testimony of Fast lacked persuasive corroboration. This, obviously, is true, owing to the nature of the case as we have hereinbefore stated. Any lack of corroboration on the part of Fast is not fatal to his case unless Fersing's proof meets the requirements of the law. We have examined the Fast proof and find nothing in it which helps Fersing's case.

The Board of Appeals in considering the sixty-six reasons of appeal to it, most of which were mere arguments, arrived at the same conclusion as the Examiner of Interferences for substantially the same reasons. The Board of Appeals held in substance that the original idea suggested relating to forcing the ring over a web having projections, which was old in the prior art according to the Mackensen patent, was suggested by Fersing but that the elements of the counts which were inventive were the suggestions of Fast, holding that the counts involve more limited subject matter than the broad idea relating to the flexed ring.

Appellant on this phase of the case argues that he disclosed the broad idea of the invention and that any suggestions which Fast may have made (and he admits that he made some), which are defined by some of the counts, enured to Fersing's benefit on a rather unusual theory that the employer under such circumstances becomes the employee. He refers to it as Fersing being a constructive employer. A number of decisions, not necessary to even cite here, are relied upon by the appellant which he claims are applicable to the instant state of facts. We have examined these decisions and find them inapplicable to the facts at bar.

 Employer and employee relationships are matters of contract, express or implied. It is easy to suppose a situation where one individual furnishes the money and pays his employee to invent something. Unless the employer has suggested the broad idea that results in the invention, his status as employer does not entitle him to be regarded as the inventor, and suggestions which he might make should be credited to the employee-inventor. This broad principle may be gleaned from the language in Gedge v. Cromwell, 19 App. D.C. 192, although the facts in that case were wholly different from those in the case at bar.

This record affords no justification for a conclusion that there ever was at any time arising from contract, express or implied, a situation existing where Fast became the employee of Fersing. Fast began as the employer and ended as the employer. The tribunals have concurred in finding that the record shows that the inventive ideas were not suggested by Fersing but by Fast, and that any work which Fersing did inured to the benefit of Fast. We are in entire accord with this conclusion upon the instant record.

We cannot quote all the material portions of the board's lengthy decision, but in the following excerpts therefrom we think the case is properly disposed of:

"Fersing was employed by Fast from February 1931 until October 1934. The invention involved is alleged to have been developed during the months of 1934 preceding September. The date when the invention was conceived is in dispute but it is alleged to be around the early part of 1934.

"We will first refer mainly to Fast's story. Fast testified he is a research engineer and has made a number of inventions in the power transmission field. He lists patents along this line granted him on applications filed prior to 1933, besides three patents on other inventions in the engineering field. He organized the Fast Engineering Corporation in the last part of 1931 for the purpose of developing inventions. Fast states that in 1928 he, for the first time, thought of developing bearings as a distinct line. The type he had in mind was an oil film bearing type because he was fully conversant with the Kingsbury or Mitchell type of bearing wherein the load is carried with wedge-shaped oil films * * *. He states that part marked No. 1 in Exhibit 24 is a sketch he made and dated April 24, 1928, which sketch shows an oil film bearing of the multiple type.

"Fast employed Fersing the first of February 1931. During 1933 they were engaged mainly in developing an automatic clutch. During this time he states he made drawing Exhibit 24 (Part 2) relating to a single film type bearing. In August 1933 Fast ordered several books relating specifically to bearings of all kinds. He went to Europe in August 1933 and left Fersing working on the automatic clutch. In a letter written Fersing Oct. 9, 1933 (Ex. 7) reference is made to a bearing they were working on. Fast ordered a Nomy bearing from abroad in November 1933. He states that he was interested in the Nomy bearing because it employed a multiple wedge-shaped film principle and he desired to embody this in his bearing but in a less expensive manner * * *. These preliminary matters are mentioned because they show clearly that very early Fast was studying and working on the general type of bearing which is involved in the present counts and which he alleges he subsequently perfected. This early work does not, of course, involve the exact construction set forth by the counts before us. [We here omit approximately two pages of the board's opinion concerning Fast's case]

"The story told by Fast appears to be straight forward and plausible. The sequence of events he alleges appears to be fairly well supported by the documents whose dates are not in dispute.

"On the other hand the story told by Fersing is not persuasive. The Examiner of Interferences stated that it leaves some doubt in the mind of the reader as to its veracity. Some months elapsed between

the first time Fersing testified and the last time he testified. His recollections are different at these times. Fersing's recollection appears to be so faulty that it cannot be relied upon. This has been pointed out by Fast in his brief in several places. * * * [Here the testimony criticized is set out]

"The Examiner of Interferences has also pointed out two other specific instances where his rebuttal testimony is at considerable variance with his testimony in chief.

"During the period prior to Oct. 10, 1934, Fersing does not appear to have made any serious positive claim to the invention. * * * [Testimony as to this point is here set out]."

Another point vigorously urged at great length by Fersing is that Fast, during the period of controversy, forcibly took from him the drawings and papers relating to the case, removed them from his files and deprived appellant of their possession. He testified that among these papers was a drawing upon which he relies as proof of his disclosure of the invention at bar to the party Fast. Fast has produced many papers, drawings and documents. We see no evidence in the record, except the statement of Fersing, of Fast having withheld anything, to the possession of which Fersing was entitled. Appellant's brief magnifies this transaction to the point of suggesting that Fast has acted in a high-handed, arbitrary and unfair manner in taking and retaining possession of the documentary matters relating to the invention. It seems to us that Fast, being the employer, if he ever intended to realize anything on the invention, would have been acting very unwisely to have permitted his employee to carry away his files.

Appellant has bitterly characterized Fast's conduct in filing the instant application as being a "grab," implying that Fast was deliberately falsifying in attempting to steal from Fersing that which he knew belonged to Fersing. On this phase of the case it is sufficient to say that appellant's proof does not sustain this conclusion and, on the other hand, it seems clear that if equitable principles controlled in this case some mention might be made relating to appellant's somewhat unusual conduct.

Another point worthy of consideration was emphasized by both tribunals below. It was stressed that of the two parties Fast would be the more likely to have made the invention. The Examiner of Interferences expressed himself in the following terms:

"Of the two parties here involved, Fast is the more likely to invent; he has filed many applications and received various patents and has had a quite wide experience in development work as well as enjoying a recognized standing amongst engineers."

 It is our conclusion that appellant's proof and the record as a whole fail to show that the concurrent decisions of the tribunals below were erroneous or that the decision of the board awarding priority of invention to the senior party Fast was manifestly wrong. The decision of the Board of Appeals is affirmed.

Affirmed.